IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24CR00040 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIGDGET MEEHAN |
| | ) | BRENNAN |
| v. | ) | |
| | ) | |
| CONNER WALKER, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by its counsel, Carol M. Skutnik, Acting United States Attorney, and Jennifer J. King, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant, Conner Walker ("Walker"). For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a sentence of at least 360 months is appropriate in this case.

On May 1, 2024, Walker was indicted on a superseding indictment with three counts of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a), one count of Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Superseding Indictment). Walker entered an open plea to the Superseding Indictment on August 19, 2024. (R. 31: Presentence Report Investigation ("PSR"), PageID 700). On Counts 1, 2, and 3, Walker faces a statutory mandatory minimum term of imprisonment of 15 years up to 30 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100 and $5,000. On Count 4, Walker faces a

1

statutory mandatory minimum term of imprisonment of five years up to 20 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100 and $5,000. On Count 5, Walker faces imprisonment up to 20 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100 and $5,000.

According to the Presentence Investigation Report ("PSR"), Walker's offense level is 43, and he is a criminal history category I. (R. 31: PSR, PageID 715). Walker entered a plea to the Superseding Indictment but has not provided probation with an acceptance of responsibility statement, and therefore the PSR does not reflect any reductions for acceptance of responsibility. (Id., PageID 710). Based on the current PSR calculations, Walker's guideline imprisonment range is life. (Id., PageID 715). Since the maximum of the applicable guideline range is higher than a combination of all statutory authorized maximum sentences, the guideline term of imprisonment is 1,560 months. (Id.). Should Walker receive credit for acceptance of responsibility, his advisory Guideline imprisonment range would be 292 to 365 months. (U.S.S.G. Sentencing Table).

I. **FACTUAL BACKGROUND**

To support its sentencing position, the United States offers the following summary of Walker's conduct. The United States also refers the Court to the factual description included in the "PSR". (Id., PageID 700-706).

A. WALKER'S ABUSE OF A TODDLER IS DISCOVERED BY LAW ENFORCEMENT

On January 5, 2024, after receiving an investigative lead concerning the production of Child Sexual Abuse Material (CSAM), FBI Agents tracked the image of Minor Victim One (MV1) to a home daycare in Parma Heights, Ohio. Agents spoke with the owner who confirmed Walker routinely slept over at the home. Walker was on site and consented to an interview with Agents.

Walker described spending a significant amount of time at the daycare residence, to include spending the night. Agents asked Walker about a CSAM video of MV1 who attended the daycare. Walker stated he was familiar with the video and that he currently had it on his phone. Walker explained he shared the video in the Session app and he retained the video and other CSAM in a "hidden" folder in his phone.

Specifically, the video was filmed in the fall of 2023 and showed Walker in the bathroom with MV1. Walker rubbed his erect penis onto the minor victim's tongue and into her mouth multiple times. He then placed his penis on MV1's vagina. Walker recorded approximately two minutes of the abuse and stopped when MV1 began to cry. Walker denied any other sexual contact with the children at the daycare or elsewhere and claimed the abuse of MV1 was an isolated event. Walker then consented to a polygraph examination at the FBI headquarters.

B.      WALKER PARTICIPATES IN A POLYGRAPH INTERVIEW

During Walker's polygraph pretest interview, he admitted to looking at child pornography for approximately two years by way of Reddit links, TikTok, and the Session app. He explained he sent approximately 30 images and a couple of videos of CSAM in the Session app groups which were dedicated to sharing child pornography. He again admitted to abusing MV1 and filming it. Walker stated watching child pornography was not enough, and he was looking for physical sexual gratification.  The polygraph exam asked, "Other than what we discussed, have you ever had sexual contact with a minor? Are you withholding any participation in sexual activity with a minor?" Walker failed the polygraph. When confronted with the failure, Walker stated when he was 17 or 18, he masturbated and ejaculated on a minor while she was sleeping. He did not disclose any other sexual activity. Walker was then taken into custody and charged through Parma Heights with Rape

3

and Gross Sexual Imposition –charges that were later dismissed in lieu of federal prosecution. A federal complaint was executed on January 11, 2024.

### C. WALKER'S IPHONE IS SEARCHED AND REVEALS ADDITIONAL VICTIMS OF ABUSE

Walker's iPhone 13 was forensically reviewed by the FBI. Agents compared photos of the children at the daycare to child pornography images on Walker's cell phone. Specifically, a video surreptitiously recorded over Walker's leg at the daycare, focused the vagina of a toddler, Minor Victim Two (MV2), who was only wearing a long-sleeve t-shirt and socks. MV2 was forensically interviewed but unresponsive to questioning due to her young age.

Walker's iPhone also revealed a sexual conversation via a children's application with Minor Victim Three (MV3). Walker asked MV3 to send nude photos of herself and paid her for the videos and images. The online conversation between Walker and MV3 lasted two days in December 2023. MV3 told Walker she was 13 years old but was 11 years old at the time. Walker said he was 16 years old but was 20 years old at the time. The photos and videos exchanged included four files of CSAM, four files of child exploitative material, and three files of obscene material Walker sent to MV3. The messages between Walker and MV3 show that each picture was taken at the direction of Walker and included him telling MV3 to "show me your pussy" and "put soap on your boobs."

### D. WALKER'S IPHONE ALSO CONTAINS CSAM IMAGES AND EVIDENCE OF HIS DISTRIBUTION OF KNOWN CSAM SERIES

Additionally, forensic analysis of Walker's iPhone revealed that from November 2023 to January 2024, Walker distributed 36 files (30 videos and six images) of CSAM, and he received approximately 750 files of CSAM. In January 2024 when law enforcement took custody of

4

Walker's iPhone, he possessed 1,356 files of CSAM (202 videos and 1,154 images) to include the files he produced and files of known series of child pornography.

## II. SENTENCING GUIDELINES COMPUTATION

Walker's total offense level is properly calculated as 43. (R. 31: PSR, PageID 710). The U.S. Pretrial and Probation Department calculated Walker's adjusted offense level at a level 52. (Id.). Pursuant to Chapter 5, Part A, in the rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as 43. (Id.). Based on a total offense level of 43 and a criminal history category of I, the guideline imprisonment range is life. (Id.). Should Walker receive a three-level reduction for acceptance of responsibility, his total offense level would be 40, for a guideline imprisonment range of 292 to 365 months. The guideline range is properly calculated in the PSR with a number of enhancements appropriately applied by the probation department. Walker does not object to any of the enhancements listed in the presentence report. The government therefore requests that this calculation be adopted by the Court.

## III. APPLICATION OF § 3553(A) FACTORS

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The Government refers to the Statement of Facts section herein and Defendant's PSR. Most significantly, Walker sexually abused toddlers, produced exploitive material of minors, and actively sought and shared CSAM in chatrooms dedicated to sharing child pornography. Walker exemplifies the worst form of child exploitation. His actions show his sexual deviation is not just limited to collecting child pornography, but one where he must abuse children and share that abuse with like-minded predators.

Walker added new victims to the devastating mass of exploited minors who will never be able to remove their abuse from the internet. He invaded the privacy and safety of two minor

5

...

children entrusted to their daycare and eroded any sense of trust the minors' families had in the care of their children. Walker's deliberate, conscious act to abuse minors was elevated when he recorded the abuse for his own pleasure and to share with others. Walker's chat history with the third minor proves he is a threat both in-person and online. Minors, either two or eleven years old, are not safe from Walker's perversions.

      B.      HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Walker grew up in Cleveland suburbs, and although he lived with different family members at various times, he was not abused or neglected. (Id., PageID 712). Walker lived in "quiet neighborhoods with no drug trafficking or violence". (Id.). He graduated high school and was employed as a nursing aide assistant at the time of his arrest. (Id., PageID 714). Walker does not have a history of mental illness nor has he been diagnosed with any physical or mental conditions. (Id.). Conversely, Walker provided the report of Adriana Flores, Ph.D. which includes information that contradicts the personal and historical information he provided to the probation department. (R. 35: Dr. Flores Report).

      C.      NEED FOR THE SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT

In Bistline, the Sixth Circuit noted a reasonable sentence must reflect the seriousness of the offense or provide for any general or specific deterrence.[1] A sentence at or near the mandatory minimum would offend the seriousness of the offense and the impact on its victims. Congress has plainly indicated "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse."[2] The words of Congress and many courts echo those of the victims

---

[1] See United States v. Bistline, 665 F.3d 767-68 (6th Cir. 2012).
[2] 18 U.S.C. § 2251 (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).

themselves. For many victims, the downloading of images is just as traumatic as the initial act of abuse. These victims express embarrassment of being depicted in these extremely vulnerable situations. They also express fear of being watched and subsequently recognized by people like Walker who fixate on videos and images of them.

Walker committed child exploitation offenses in the comfort and privacy of a place parents believed their children would be cared for and safe. He abused a position of trust he held over some of his victims. He alone is responsible for his actions and the impact they have had on the children that sent him images or are depicted in the images he produced. Walker should not be punished any less because two of the victims were too young to articulate the abuse or unaware they were being recorded. The law protects minors that cannot or will not protect themselves. Walker also obtained other images of child pornography from the Internet in addition to the images he obtained from the young minor he befriended online or those at the daycare. He amassed, sought out, and enticed minors to create child pornography in addition to raping and secretly recording minors. The sentence imposed should reflect the seriousness of Walker's actions, promote respect for the law, and provide just punishment.

D. NEED FOR SENTENCE TO AFFORD ADEQUATE DETERRENCE

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.[3] In United States v. Goldberg,[4] the court opined:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded, consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

In fact, the Bistline Court reversed a district court that failed to see any importance in general deterrence.[5] The district court stated, "general deterrence . . . will have little [if] anything to do with this particular case."[6] The Sixth Circuit found "that [the district court's] statement is inexplicable, and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'"[7]

---

[3] United States v. Irey, 612 F.3d 1160, 1206 (citing New York v. Ferber, 458 U.S. 747, 760 (1982)) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); Osbourne v. Ohio, 495 U.S. 103, 109-10 (1990) (It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand); United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007) (Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) (The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it. Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children.).
[4] 491 F.3d 668, 672 (7th Cir. 2007).
[5] See Bistline, at 767.
[6] Id.
[7] Id. (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

## IV. MONETARY PENALTIES

### A. FINE

The PSR report found Walker is unable to pay a fine within the guideline range. (R. 31: PSR, PageID 715). The government would defer to the Court regarding a fine but would first request that full restitution be ordered to the identified victims.

### B. 18 U.S.C. § 3014 ADDITIONAL SPECIAL ASSESSMENT

Walker is subject to a mandatory $25,000 ($5,000 for each of the five counts in the Indictment) Additional Special Assessment under 18 U.S.C. § 3014. The statute states, in pertinent part:

> Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2021, in addition to the assessment imposed under section 3013, **the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under**—
>
> (1) chapter 77 (relating to peonage, slavery, and trafficking in persons);
>
> (2) chapter 109A (relating to sexual abuse);
>
> **(3) chapter 110 (relating to sexual exploitation and other abuse of children);**
>
> (4) chapter 117 (relating to transportation for illegal sexual activity and related crimes)....

18 U.S.C. § 3014(a) (emphasis added). These assessments are deposited in the Domestic Trafficking Victims' Fund and awarded as grants or enhanced programming for victims pursuant to 18 U.S.C. §§ 3014(c) and (e)(1). Because Walker has been convicted of offenses under Chapter 110, the Court must impose this additional special assessment unless it finds he is unable to pay; however, both Defendant's current and <u>future</u> financial status is to be evaluated when making the

indigency determination under § 3014.[8] That is, negative net worth at the time of sentencing is not dispositive of the issue.[9] If "at some point" a defendant would be able to pay the Additional Special Assessment, "[t]his ability to earn money in the future preclude[s] a finding of indigence for purposes of § 3014."[10]

Walker has a high school diploma and has shown he can obtain employment. While he may not have $5,000 or $25,000 on hand to pay the Special Assessment now, he can participate in the IFRP while incarcerated which affords him the future ability to pay the additional special assessment. In addition, he demonstrates an ability to obtain employment in the future while on Supervised Release. Therefore, Walker should be ordered to pay the additional special assessment.

    C.    THE AMY, VICKY, AND ANDY CHILD PORNOGRAPHY VICTIM ASSISTANCE ACT OF 2018 (AVAA) GENERALLY

The *Amy, Vicky, and Andy Child Pornography Victim Assistance Act* of 2018 (AVAA), enacted on December 7, 2018, made a number of changes to existing child pornography laws, specifically with regard to restitution. Specifically, the law: (1) provides that restitution must be ordered for all "child pornography trafficking offenses" of no less than $3,000 per victim; (2) imposes a new special assessment for those defendants who are convicted of certain child pornography related offenses; (3) permits victims of child pornography trafficking offenses to seek a one-time payment of $35,000 from a reserve fund; (4) amends the definition of "sexually explicit conduct" under 18 U.S.C. § 2256(2); and (5) adds 18 U.S.C. § 3509(m)(3), which allows

---

[8] See United States v. Shepherd, 922 F.3d 753 (6th Cir. 2019). See also United States v. Janatsch, 722 F. App'x 806, 810-11 (10th Cir. 2018).

[9] United States v. Kelley, 861 F.3d 790, 801-802 (8th Cir. 2017).

[10] Id.

victims, their attorneys, and any purported expert to access a victim's own sexually explicit images during any criminal proceeding.  Of particular importance in this case is the provision that sets a <u>floor</u> of $3,000 in restitution to the victims depicted in the Defendant's images that have submitted a claim for a monetary loss.

### D. RESTITUTION REQUESTS IN THIS CASE

The National Center for Missing and Exploited Children (NCMEC) identified 361 image files and 71 video files from Walker's collection that depicted children <u>previously identified</u> by law enforcement[11].  These identified images came from 126 separate series.  Of those, nine victims have submitted requests for restitution in Walker's case.

| **Victim/Series** | **# of images/ videos** | **Restitution requested** | **Payable to:** |
|---|---|---|---|
| "Aprilblonde" aka "April" | 7 images | $10,000 | "Restore the Child in Trust for April" and forwarded to: Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406. |
| "Sweet White Sugar" aka "Pia" | 3 images | $7,500 | Deborah A. Bianco in trust for Pia P.O. Box 6503, Bellevue, WA 98008 |
| "2crazygurls" aka "Chelsea" | 1 video | $10,000 | "Restore the Child in Trust for Chelsea" and forwarded to: Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406. |
| "Sparkling Velvet" | 7 images | $5,000 | "Jones Day on behalf of SV" Jones Day c/0 Charlotte Hogan and Tyler Loveall 110 North Wacker Drive, Suite 4800, Chicago, IL 60606 |
| "Marineland1" aka "Sarah" | 1 image 1 video | $10,000 | "Carol L. Hepburn I/T/F Sarah" PO Box 17718, Seattle, WA 98127 |

---

[11] According to forensic reports and search warrant productions, Walker received and distributed hundreds of images and videos of child pornography.  Thus, most of the children depicted in these files have yet to be identified.

11

| | | | |
|---|---|---|---|
| "Tara" aka "Sloan" | 7 images 2 videos | $10,000 | "Carol L. Hepburn I/T/F Sloan" PO Box 17718, Seattle, WA 98127 |
| "Vicky" aka "Lily" | 3 images | $10,000 | "Carol L. Hepburn I/T/F Lily" PO Box 17718, Seattle, WA 98127 |
| "BestNecklace" aka "Maria" | 3 images | $7,500 | "Carol L. Hepburn I/T/F Maria" PO Box 17718, Seattle, WA 98127 |
| "PD11"[12] | 1 video | $3,000 | Jones Day c/o Allison L. McQueen and Andrew E. Lelling 110 North Wacker Drive, Suite 4800 Chicago, IL 60606 |

The Government contacted Walker's counsel to determine if an amount of restitution can be agreed upon. The Government will contact victims' representatives to ensure they are aware of any anticipated agreement. Should no agreement be reached, the Government would respectfully submit the requests above and ask that the amounts of restitution be awarded and in accordance with caselaw cited above. At a minimum, each victim should be awarded at least the $3,000 minimum restitution award as required by statute.

V. **VICTIM IMPACT STATEMENT**

Subsequent to the filing of the PSR, the parents of Minor Victim Two submitted a written victim impact statement. The statement was provided to the probation department, defense counsel, and this Honorable Court. The Government respectfully requests that this statement be considered at the time of sentencing. If the parents of Minor Victims attend the sentencing hearing, the Government would respectfully ask that they be permitted to address the Court and read their statement aloud.

---

[12] The USAO received the restitution request from PD11 after the filing of the 2nd Revised PSR and forwarded the restitution request to probation and defense counsel.

**VI.  CONCLUSION**

      For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that this Court impose a sentence within the sentencing guideline range.

                                      Respectfully submitted,

                                      CAROL M. SKUTNIK
                                      Acting United States Attorney

                    By:    /s/ Jennifer J. King
                                 Jennifer J. King (OH: 0089375)
                                 Assistant U.S. Attorney
                                 801 West Superior Avenue, Suite 400
                                 Cleveland, Ohio 44113
                                 Tel. No. (216) 622-3759
                                 E-mail: Jennifer.King@usdoj.gov